## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**PINCH A PENNY, LLC,**

    Plaintiff,

    v.

**DUDE HOLDINGS INC.,**
**RICHARD M. BOWLES, II, and**
**CYNTHIA BOWLES**,

    Defendants.

Case No.

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Pinch A Penny, LLC f/k/a Pinch A Penny, Inc. ("**PAP**") sues Defendants Dude Holdings Inc. ("**DHI**"), Richard M. Bowles, II ("**Mr. Bowles**"), and Cynthia Bowles ("**Ms. Bowles**") (collectively, "**Defendants**") and alleges:

### Parties

1.     PAP is a limited liability company organized and existing under the laws of the state of Delaware with its principal place of business in Pinellas County, Florida.

2.     PAP's sole member is Porpoise Pool & Patio, LLC, which is a limited liability company organized and existing under the laws of the state of Delaware with its principal place of business in Pinellas County, Florida.

3.      Porpoise Pool & Patio, LLC's sole member is SCP Distributors, LLC, which is a limited liability company organized and existing under the laws of the state of Delaware with its principal place of business in St. Tammany Parish, Louisiana.

4.      SCP Distributors, LLC's sole member is Pool Corporation, which is a Delaware corporation with its principal place of business in St. Tammany Parish, Louisiana.

5.      DHI is a company organized and existing under the laws of the state of Texas with its principal place of business in Shoreacres, Texas.

6.      Mr. Bowles is an adult individual residing in and citizen of Shoreacres, Texas.

7.      Ms. Bowles is an adult individual residing in and citizen of Shoreacres, Texas.

## Jurisdiction and Venue

8.      Subject matter jurisdiction in this matter is founded upon 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. The Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

9.      The Court also has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the parties to this action are diverse and the amount in controversy exceeds $75,000.00.

10.     Venue is proper in this Court under 28 U.S.C. § 1391 and Section 23(b)(ii) of the parties' franchise agreement. A substantial part of the events or omissions giving rise to the claims asserted by Plaintiff occurred in this District. Additionally, under the parties' franchise agreement, the parties agreed that sole and exclusive jurisdiction and venue for all lawsuits arising out of or relating to the franchise agreement was either the state court in Pinellas County, Florida or the United States District Court for the Middle District of Florida.

## Pinch A Penny® Franchising

11.     PAP is an operator and franchisor of swimming pool supply and service stores.

12.     PAP franchises retail stores that sell swimming pool supplies and equipment and related items, as well as performing swimming pool service and repair work. PAP owns trademarks and other valuable intellectual property associated with the PAP franchise system.

13.     PAP has developed methods and procedures—called a "system"—used in the operation of pool supply and service businesses. The PAP system is a comprehensive business format for the establishment, operation, and development of high-standard pool supply and service businesses with distinctive features in products, services, distribution, accounting, training, and management assistance.

14.    The PAP system is designed to ensure that Pinch A Penny® pool supply stores and the services and products offered by them meet uniform, high quality standards. PAP's system is also designed to protect PAP's name and reputation. The PAP system is founded upon adherence to PAP's standards and specifications.

15.    PAP's system is the culmination of decades of PAP's experience and investment of resources into its development and refinements. Over many years, PAP has expended untold resources and efforts in advertising and other efforts to gain customer association of PAP and its stores with pool supply and service expertise, convenience, and quality.

16.    To identify the source, origin, and sponsorship of Pinch A Penny® pool supply stores and the services they offer—and to distinguish those Pinch A Penny® stores and their products and services from those established, made, offered and sold by others—PAP has extensively used certain trademarks, service marks, trade names, logos, emblems, and indicia of origin, including but not limited to the following names and marks (the "**Pinch A Penny Marks**"):

| Mark | Registration Number | Effective Date |
|---|---|---|
| PINCH A PENNY | 1,201,596 | 7/13/1982 |
| PINCH · A · PENNY POOL · PATIO · SPA | 1,699,608 | 7/7/1992 |

| | | |
|---|---|---|
| THE PERFECT PEOPLE FOR A PERFECT POOL | 1,768,283 | 4/27/1993 |
| THE PERFECT PEOPLE FOR A PERFECT PLANET | 3,848,922 | 9/14/2010 |
| PINCH·A·PENNY POOL · PATIO · SPA, THE PERFECT PEOPLE FOR A PERFECT POOL | 1,813,184 | 12/21/1993 |
| PINCH-A-PENNY | 2,050,994 | 4/8/1997 |
| porpoise | 2,715,540 | 5/13/2003 |
| suncoast | 2,136,462 | 2/17/1998 |

17.     The Pinch A Penny Marks are registered on the Principal Register of the United States Patent and Trademark Office. The registrations continue in full force and effect and all those eligible are incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

18.     PAP has given notice to the public of the registration of the Pinch A Penny Marks as provided in 15 U.S.C. § 1111 and complies with all legal requirements to ensure that PAP and its authorized licensees remain the exclusive users of the Pinch A Penny Marks.

19.     PAP has continuously used the Pinch A Penny Marks in interstate commerce in connection with the promotion and licensing of PAP pool supply

and service stores and the services they offer throughout the United States since the date of their registration.

20.    PAP and its authorized franchisees use the Pinch A Penny Marks as the marks and trade identity by which the products and services offered by PAP and its franchisees are distinguished from other pool supply and pool service businesses and the products and services offered by them.

21.    PAP and its authorized franchisees have extensively advertised and promoted Pinch A Penny® pool supply stores and the services they offer under the Pinch A Penny Marks throughout the United States and through various media.

22.    As a result of such efforts and the considerable resources devoted to those efforts, the services offered by PAP and its licensees under the Pinch A Penny Marks have been met with widespread public approval and have established demand and goodwill among consumers throughout the United States, including the state of Texas.

23.    In addition, PAP has invested substantial time, money, and effort in developing distinctive and proprietary tiles for use as the flooring in all PAP stores (the "**Water Tiles**"). The Water Tiles are unique and custom manufactured for the exclusive use by PAP and its franchisees. The Water Tiles are used at every Pinch A Penny® franchise store. The intent and effect of PAP's investment has been to create a decor for its stores that is visually

6

distinguishable from all other competitors in the retail pool supplies industry. The Water Tiles are important features of PAP's trade dress and components of its image.

24.    The Pinch A Penny Marks and trade dress are often part of the building structure and inseparable from its realty. The marks are also often incorporated into functional components and products of the equipment used in Pinch A Penny® stores, such as the Porpoise brand vacuum cleaners and pumps and the Suncoast brand chemicals.

25.    Through written franchise agreements, PAP licenses the use of its marks and its system of operating pool supply and service stores to others, requiring them to operate uniformly and in accordance with PAP's specifications to protect PAP's image and brand.

## The Franchise Agreement with Defendants

26.    On November 25, 2023, PAP and DHI entered into a franchise agreement, ancillary agreements, and addenda (collectively, the "**Franchise Agreement**") for Pinch A Penny® Store No. 290 located at 9001 Spencer Hwy, Suite F, La Porte, Texas 77571 (the "**Store**"). A copy of the Franchise Agreement is attached as **Exhibit "A."**

27.    PAP also provided a $430,000 loan to DHI to finance DHI's leasehold improvements for the Store and to purchase inventory. DHI provided PAP with a Promissory Note, whereby it promised to make monthly payments

to PAP beginning one year after opening the Store. On March 3, 2023, the parties executed an Amendment to Promissory Note, which modified the loan amount under the Promissory Note to $400,046.31 (the Promissory Note and Amendment to Promissory Note are collectively referred to hereafter as the "**Promissory Note**"). The Promissory Note included DHI's failure to make payments under the Promissory Note, any breach of the Franchise Agreement by DHI, and/or the expiration or termination of the Franchise Agreement as events of default under the Promissory Note. A copy of the Promissory Note is attached as **Exhibit "B."**

28. DHI also executed a Security Agreement (and related amendment to the Security Agreement following the Amendment to Promissory Note described above) whereby it provided PAP with a security interest in all of DHI's owned or thereafter acquired furniture, fixtures, equipment, accessories, inventory, licenses, permits, goods, materials, supplies, accounts, general intangibles, and all other assets of DHI, including but not limited to, the equipment and customer contacts used in the operation of the Pinch A Penny® business at the Store (collectively, the "**Secured Assets**"). A copy of the Security Agreement and Amendment to Security Agreement is attached as **Exhibit "C."**

29. On April 2, 2024, PAP filed two UCC Financing Statements (the "**Financing Statements**") with the Texas Secretary of State as Document

Nos. 1350513690003 and 1350513690004 that cover the Secured Assets. Copies of the Financing Statements are attached as **Exhibit "D."**

30.    Mr. and Ms. Bowles (together, "**Guarantors**"), as co-owners of DHI, executed an Owner's Guaranty agreement, guaranteeing the payment and performance of DHI's obligations under the Franchise Agreement. A copy of Guarantors' Owner's Guaranty is appended to the Franchise Agreement. (Exhibit "A.")

31.    DHI leased the Store's premises under a lease (the "**Lease**") with a third-party landlord. Pursuant to the Franchise Agreement, DHI executed a Collateral Assignment of Lessee's Interest in the Lease (the "**Collateral Assignment**"). A copy of the Collateral Assignment is attached as **Exhibit "E."**

32.    The Collateral Assignment assigned all of DHI's rights, title, and interest in the Lease to PAP and provided that PAP was entitled to take immediate possession of the Lease and Store if DHI defaulted under the Franchise Agreement.

## Defendants' Defaults Under the Franchise Agreement

33.    On October 30, 2025, Mr. Bowles informed PAP via email sent to PAP's Director of Operations that DHI would cease all operation of the franchised business effective at the end of that same day.  In the same email,

Mr. Bowles offered to permit PAP's assumption of the lease for the Store location.

34.    The following day, PAP's Director of Operations spoke with Mr. Bowles, confirmed that the franchised business had closed, and requested that Mr. Bowles reconsider the (unilateral) decision to cease DHI's operations; however, Mr. Bowles refused to reconsider.

35.    On November 3, 2025, PAP served DHI with a Notice of Termination, which declared that DHI was in default of its obligations under the Franchise Agreement due to abandonment and repudiation and informed DHI that the Franchise Agreement would therefore terminate at the end of the day on November 3, 2025.  A copy of DHI's Notice of Termination is attached as **Exhibit "F."**

36.    The Notice of Termination also notified DHI that PAP would accept DHI's previous offer to assume the lease and that, because DHI was in default under the Collateral Assignment, PAP was also formally notifying DHI that it intended to immediately take possession of the Store as provided under the Collateral Assignment, demanding that DHI cooperate with PAP's efforts to take possession of the Store

37.    Despite the termination of the Franchise Agreement and PAP's assertion of possessory rights under the Collateral Assignment, DHI has failed

and refused to surrender the Store location and continued to use the Pinch A Penny Marks, including at the Store location.

38.    DHI is also in default under the Promissory Note and the principal balance due thereunder has been accelerated.

39.    DHI also owes to PAP outstanding royalties and other amounts in the sum of $184.58 as of the date this Complaint is being prepared.

40.    PAP's affiliate, Sun Wholesale Supply, LLC, which provides merchandise, chemicals, and supplies to DHI, had an account balance due and owing from DHI in total sum of $7,381.62 immediately prior to the termination of the Franchise Agreement.

41.    Following the termination of the Franchise Agreement but prior to institution of this action, Sun Wholesale Supply, LLC assigned its receivable owing from DHI to PAP.

42.    Due to DHI's defaults, PAP has declared and hereby declares the entire outstanding balance under the Promissory Note and its amendment, as well as all other outstanding amounts due and payable to PAP, including without limitation the amount assigned to it by Sun Wholesale Supply LLC, to be immediately due and owing.

## <u>Defendants' Violation of</u>
## <u>Post-Termination Covenants and Infringement</u>

43.    Notwithstanding the Franchise Agreement's termination and PAP's demands for possession of the Store's premises, Defendants continue to retain possession of the Store and are falsely holding it out to the consuming public as an authorized and duly licensed Pinch A Penny® store.

44.    There is no reasonable way for a customer to know that Defendants' store is not authorized to use Pinch A Penny's marks and is not associated with the Pinch A Penny system. By all appearances, the Store remains, and its premises appear to be, a Pinch A Penny® store, although it is not.

45.    It is impractical, if not impossible, for Defendants to sufficiently separate the distinguishing characteristics of the Store, including the Water Tiles, from PAP. Consequently, unless Defendants are prohibited from continuing to possess the Store, PAP's brand and image are at risk and will be impaired by a customer's negative views and association of experiences at the Store's location with the Pinch A Penny® brand.

46.    PAP is also prevented from making productive use of its own leasehold property as a consequence of Defendants' conduct because Defendants are wrongfully possessing and detaining the Store premises

following termination of the Franchise Agreement and PAP's exercise of rights under the Collateral Assignment.

47.    PAP has retained the undersigned counsel to prosecute this action and is obligated to pay reasonable attorneys' fees.

48.    All conditions precedent to bringing this suit have occurred, have been satisfied, or have been waived.

## COUNT I -- BREACH OF CONTRACT – POST-TERMINATION OBLIGATIONS

49.    PAP repeats and realleges paragraphs 1 through 48 above.

50.    PAP terminated the Franchise Agreement because of DHI's closure of the franchise store for four or more consecutive days without authorization from PAP.

51.    Upon termination of the Franchise Agreement, DHI was obligated, among other things, to:

    A.    immediately cease using the Pinch A Penny Marks and all elements of the Pinch A Penny system; and

    B.    return all trade secrets, confidential materials, confidential manuals, and any equipment or signage bearing the Pinch A Penny Marks;

    C.    pay all sums owing to PAP;

    D.    Provide PAP a complete list of DHI's employees, clients, customers, their respective addresses, and any outstanding obligations by DHI to any third parties;

E.    Transfer and assign to PAP all telephone numbers that have been used, advertised, promoted or listed relating to the Franchise Business; and

F.    pay PAP stipulated damages in the sum equal to the product of the number of years remaining in the term of the Franchise Agreement multiplied by an amount equal to 50% of the arithmetical average of the weekly Royalty and Advertising Fee earned per year over the two-year period ending with the last day of the month preceding the termination date.

52.    DHI has failed and refused to comply with its post-termination obligations, materially breaching the Franchise Agreement and damaging PAP.

53.    PAP is without an adequate remedy at law to address and remedy its injuries resulting from DHI's breach of the above obligations, and until DHI is ordered to abide by the post-termination promises it made to PAP, PAP will continue to suffer substantial, irreparable injury to its business and reputation.

## COUNT II -- BREACH OF FRANCHISE AGREEMENT (IN-TERM OBLIGATIONS)

54.    PAP repeats and realleges paragraphs 1 through 48 above.

55.    In the Franchise Agreement, DHI promised to:

A.    Maintain open business hours for the Store seven days each week;

B.    Pay all financial obligations due to PAP; and

C.    Actively promote the sale of Pinch A Penny® system products and services and us its primary and best efforts to

14

cultivate, develop, and expand the market therefore at the Store and within the Reserved Pool Services Territory.

56.    DHI breached each of the above obligations, causing PAP to suffer damages.

## COUNT III – BREACH OF COLLATERAL ASSIGNMENT

57.    PAP realleges paragraphs 1 through 48 above.

58.    In the Collateral Assignment, DHI promised to immediately deliver possession of the Store to PAP upon an Event of Default under the Franchise Agreement.

59.    DHI breached this obligation, causing PAP to suffer damages.

60.    PAP is without an adequate remedy at law to address and remedy its injuries resulting from DHI's breach of the above obligations, and until DHI is ordered to abide by the promises it made to PAP, PAP will continue to suffer substantial, irreparable injury to its business and reputation.

## COUNT IV – BREACH OF PROMISSORY NOTE

61.    PAP realleges paragraphs 1 through 48 above.

62.    DHI defaulted under the Promissory Note by, including but not limited to, failing to pay amounts due under the Promissory Note, breaching of the Franchise Agreement, and the termination of the Franchise Agreement.

63.     Upon DHI's default, PAP was entitled to and did declare the outstanding account balance of the Promissory Note immediately due and owing.

64.      As of November 3, 2025, the balance due and owing from DHI under the Promissory Note is $445,786.35.

65.     DHI breached the Promissory Note by failing to pay this outstanding balance.

## COUNT V – BREACH OF GUARANTY

66.     PAP realleges paragraphs 1 through 48 above.

67.     Guarantors executed an Owner's Guaranty in favor of PAP.

68.     Under the Owner's Guaranty, Guarantors unconditionally and absolutely guaranteed the prompt and full payment of the liabilities of DHI under the Franchise Agreement and Promissory Note and the performance of all obligations by DHI under the Franchise Agreement and Promissory Note.

69.     DHI breached the Franchise Agreement and failed to pay the outstanding amounts due under the Promissory Note, and Guarantors breached the Owner's Guaranty by failing to honor its terms, including by their failure to pay the amounts owing to PAP under the Franchise Agreement and Promissory Note and to ensure the performance of DHI's post-termination responsibilities.

70.    PAP has been damaged by Guarantors' breach of the Owner's Guaranty.

## COUNT VI – LANHAM ACT - TRADEMARK INFRINGEMENT

71.    PAP repeats and realleges paragraphs 1 through 48 above.

72.    Defendants' acts, practices and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the Pinch A Penny Marks, and Defendants' sale, offering for sale, distribution or advertising of goods and services under the Pinch A Penny Marks, or any designs similar thereto, is likely to cause confusion or mistake or to deceive the public in violation of 15 U.S.C. § 1114(l).

73.    As a direct and proximate result of Defendants' infringement, Pinch A Penny has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

74.    PAP has no adequate remedy at law because the Pinch A Penny Marks are unique and represent to the public PAP's identity, reputation and goodwill, such that damages alone cannot fully compensate PAP for Defendants' misconduct.

75.    Unless enjoined by the Court, Defendants will continue to use and infringe the Pinch A Penny Marks, to PAP's irreparable injury. This threat of future injury to PAP's business identity, goodwill, and reputation requires

injunctive relief to prevent Defendants' continued use of the Pinch A Penny Marks and to ameliorate and mitigate PAP's injuries.

### COUNT VII -- LANHAM ACT – TRADEMARK DILUTION

76.     PAP repeats and realleges paragraphs 1 through 48 above.

77.     Defendants' acts, practices, and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the Pinch A Penny Marks, and Defendants' sale, offering for sale, distribution or advertising of non-conforming goods under the Pinch A Penny Marks causes dilution of the distinctive quality of the Pinch A Penny marks, in violation of 15 U.S.C. § 1125(c).

78.     As a direct and proximate result of Defendants' infringement, PAP has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

79.     PAP has no adequate remedy at law because the Pinch A Penny Marks are unique and represent to the public PAP's identity, reputation, and goodwill, such that damages alone cannot fully compensate PAP for Defendants' misconduct.

80.     Unless enjoined by the Court, Defendants will continue to use and infringe the Pinch A Penny Marks, to PAP's irreparable injury. This threat of future injury to PAP's business identity, goodwill, and reputation requires

injunctive relief to prevent Defendants' continued dilution of the Pinch A Penny Marks and to ameliorate and mitigate PAP's injuries.

## COUNT VIII -- LANHAM ACT - UNFAIR COMPETITION

81.     PAP repeats and realleges paragraphs 1 through 48 above.

82.     Defendants' acts, practices and conduct constitute unfair competition, false designation of origin and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or to cause mistake, to deceive others as to the affiliation, connection, or association of the parties and/or to misrepresent the nature, characteristics, qualities, or geographic origin of the parties' goods, services and commercial activities, all in violation of 15 U.S.C. § 1125(a).

83.     As a direct and proximate result of Defendants' unfair competition, PAP has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

84.     PAP has no adequate remedy at law because the Pinch A Penny Marks are unique and represent to the public PAP's identity, reputation, and goodwill, such that damages alone cannot fully compensate PAP for Defendants' misconduct.

85.     Unless enjoined by the Court, Defendants will continue to use and infringe the Pinch A Penny Marks, to PAP's irreparable injury. This threat of

future injury to PAP's business identity, goodwill and reputation requires injunctive relief to prevent Defendants' continued use of the Pinch A Penny Marks and to ameliorate and mitigate PAP's injuries.

## COUNT IX – REPLEVIN

86. PAP realleges paragraphs 1 through 48 above.

87. The description of the personal property sought to be replevied is all of DHI's furniture, fixtures, equipment, accessories, inventory, goods, material, supplies, and assets (collectively, the "**Franchise Assets**").

88. To the best of PAP's knowledge, information, and belief, the Franchise Assets have a value of approximately $80,000 and their last known location was the premises of the Store, to wit: 9001 Spencer Hwy, Suite F, La Porte, TX 77536.

89. Under the Security Agreement, DHI granted PAP a security interest in the Franchise Assets and all proceeds thereof, to secure DHI's obligations under the Promissory Note.

90. DHI is in default under the Promissory Note, and PAP is entitled to recover the outstanding balance from DHI.

91. As a result of DHI's default, PAP is entitled to possession of the Franchise Assets under the Security Agreement.

92. Despite PAP's demand for delivery of the Franchise Assets, Defendants are wrongfully detaining the Franchise Assets following DHI's

default under the Security Agreement. To the best of PAP's knowledge, information, and belief, Defendants detain the Franchise Assets because they are unwilling to recognize PAP's right to ownership and possession of the Franchise Assets.

93.    To the best of PAP's knowledge, information, and belief, the Franchise Assets have not been taken for any tax, assessment, or fine pursuant to law.

94.    The Franchise Assets have not been taken under an execution or attachment against the property of PAP.

95.    As a result of Defendants' wrongful detention of the Franchise Assets, PAP has suffered damages.

## **<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, Pinch A Penny, LLC requests the following relief against Defendants Dude Holdings Inc., Richard M. Bowles, II, and Cynthia Bowles:

(A)    A preliminary and permanent injunction directing that Defendants surrender possession and be ejected from the premises and facilities at 9001 Spencer Hwy, Suite F, La Porte, TX 77536;

(B)    A preliminary and permanent injunction directing Defendants to surrender possession of the Franchise Assets located at 9001 Spencer Hwy, Suite F, La Porte, TX 77536, which is subject to PAP security interests;

(C)    A preliminary and permanent injunction enjoining Defendants, their agents, servants, and employees and those people in active concert or participation with them, from:

1.  Using the Pinch A Penny Marks or any trademark, service mark, logo or trade name that is confusingly similar to the Pinch A Penny Marks;

2.  Otherwise infringing the Pinch A Penny Marks or using any similar designation, alone or in combination with any other components;

3.  Passing off any of their products or services as those of PAP or PAP's authorized franchisees;

4.  Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of Defendants' businesses, products or services;

5.  Causing a likelihood of confusion or misunderstanding as to Defendants' affiliation, connection or association with PAP and its franchisees or any of PAP's products or services; and

6.  Unfairly competing with PAP or its franchisees, in any manner;

(D)    An order pursuant to 15 U.S.C. § 1118 that all labels, signs, prints, packages, receptacles, logo items, and advertisements, bearing the Pinch A Penny Marks, in the possession of Defendants, their agents, servants, and employees, and those people in active concert or participation with them, be delivered to PAP at Defendants' cost;

(E)    An order requiring Defendants to account for and pay over to PAP all gains, profits and advantages derived by them as a result of their infringement of the Pinch A Penny Marks and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117, and by the controlling principles of common law;

(F)    An award and judgment in favor of PAP and against Defendants for such damages as PAP has sustained by reason of Defendants' trademark infringement and unfair competition; and that, because of the willful nature of said infringement, the Court enter judgment for PAP for three times the amount of said damages, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

22

(G)    An order requiring Defendants to file with the Court and to serve upon PAP's counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order;

(H)    An award and judgment in favor of PAP and against Defendants, jointly and severally, for damages arising from Defendants' breaches of the Franchise Agreement and Owners' Guaranty;

(I)    An award and judgment in favor of PAP and against Defendants, jointly and severally, for damages arising from Defendants' breaches of the Promissory Note;

(J)    An award and judgment in favor of PAP and against Defendants, jointly and severally, for damages arising from Defendants' breaches of the Collateral Assignment;

(K)    An award and judgment in favor of PAP and against Defendants, jointly and severally, for possession of the Franchise Assets, and damages caused by Defendants' retention of the Franchise Assets;

(L)    A judgment in favor of PAP and against Defendants for the costs and expenses, including reasonable attorneys' fees, incurred by PAP in connection with this action as provided for by contract or statute; and

(M)    Such other relief this Court deems just and proper.


Dated: November 14, 2025                    Respectfully submitted,



                                            */s/ Christian C. Burden*
                                            Christian C. Burden
                                            Florida Bar No. 0065129
                                            chris.burden@quarles.com
                                            **Quarles & Brady LLP**
                                            101 E. Kennedy Boulevard, Suite 3400
                                            Tampa, Florida 33602
                                            Tel.: (813) 387-0300

                                            *Attorneys for Pinch A Penny, LLC*

23